FILED

2023 OCT 18 PM 3: 07

CLERK U.S. DISTRICT COURT
OF TEXAS

BY _____ GK _____

| | |
|---|---|
| **JOHN RAMOS**<br>　　　　**Plaintiff,**<br><br>**v.**<br><br>**MIDLAND CREDIT MANAGEMENT, INC.,**<br>　　　　**Defendant.** | ) **JURY TRIAL DEMANDED**<br>)<br>)<br>) **Case No.**<br>) **22-cv-00985-DII**<br>)<br>)<br>)<br>) |

---

## MOTION TO COMPEL DISCOVERY RESPONSES FROM DEFENDANT MIDLAND CREDIT MANAGEMENT INC.,

### I.　　INTRODUCTION

NOW INTO COURT the Plaintiffs John Ramos and the memorandum in support of Plaintiff's motion to produce Rule 34 Production of Documents from Midland Credit Management, Inc., ("Debt Collector") and to compel discovery responses, Plaintiffs states as follows:

### II.　　FACTUAL BACKGROUND

2. Plaintiff seeks and Order Compelling Debt Collector, to produce documents to Plaintiffs First Set of Production of Documents.

3. As detailed below, Plaintiff has done its best to avoid the need to bring this motion before the Court.

4. On September 14, 2023, Parties has Rule 26(f) Conference meeting.

5. On September 18, 2023 Plaintiffs served Rule 34 Request to counsel email (Production of Documents).

> Rule 26(d)(2) Early Rule 34 Requests.
>
> (A) Time to Deliver. More than 21 days after the summons and complaint are served on a party, a request under Rule 34 may be delivered:
>
> (i) to that party by any other party, and
>
> (ii) by that party to any plaintiff or to any other party that has been served.
>
> (B) When Considered Served. The request is considered to have been served at the first Rule 26(f) conference.

6. On or about October 10, 2023  Defendant provided Objections to the Production of Documents.

7. Please see the production of documents served on Defendant that never was produced.

8. Plaintiff reached out through email to meet and confer with Defendant about their insufficient discovery response and see where we can come to agreeance about what laws govern response on documents.

9. On October 11, 2023, Plaintiff and Defendant meet and confer with no agreement on when Defendant would produce some type of information.

10. During the call the Defendant counsel does not seem to take this case serious, once Plaintiff said "ill be filing the Motion to Compel for the policy

and procedures" Defendant counsel replied with "ill be filing mine also and seeking attorney fee's." Plaintiff has gave firm accurate questions and information to all of his answers and request.

11. Plaintiff certify the listed events are true and accurate and attempted to meet and confer with Debt Collector before filing this Motion i.e. emails and telephone call to Debt Collector counsel and to no avail.

### III. RELIEF REQUESTED

12. Plaintiff respectfully requests that this Honorable Court compel Debt Collector, to answer the Production of Documents request, and provide sworn verification to the responses.

13. Plaintiff also seeks to have this Honorable Court sanction Debt Collector, by casting it for Plaintiff's cost incurred in being forced to bring this motion before the Court.

### IV. CONCLUSION

14. WHEREFORE PLAINTIFF PRAYS that this Honorable Court enter an Order compelling Debt Collector, to answer the Production of Documents requests, Plaintiff does not want to the Court to sanction Defendant or Defendnant counsel but only produce to disputing proceduce as it's the heart of Plaintiff issue.

Respectfully submitted,

Dated: October 17, 2023

John Ramos
2250 Double Creek Dr. #6711
Round Rock, TX 78664
Johnramos2121@gmail.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served upon Defendant via their attorneys of record via U.S.P.S. regular mail to

| |
|---|
| Manuel H. Newburger |
| Barron & Newburger, P.C. |
| 7320 N. MoPac Expy., Suite 400 |
| Austin, Texas 78731 |

Dated: October 18, 2023

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| **JOHN RAMOS**       ) | |
|          **Plaintiff,**    ) | |
| ) | |
| **v.**               ) | **Case No. 23-cv-00985-DII** |
| ) | |
| **MIDLAND CREDIT MANAGEMENT,**   ) | |
| **INC.,**          ) | |
|          **Defendant.**   ) | |
| ) | |

---

### REQUESTS FOR PRODUCTION OF DOCUMENTS

---

To:    Midland Credit Management, Inc. through their attorney Manuel H Newburger.

      John Ramos, Plaintiff in the above-entitled and numbered cause, and hereby serves upon Defendant the following Requests for Production as allowed by Federal Rules of Civil Procedure. You must produce all requested documents (as they are kept in the ordinary course of business or organized and labeled to correspond with categories in each request) for inspection and copying not more than 30 days after service of this request.

      You are to produce the documents to:

John Ramos
2250 Double Creek Dr. #6711
Round Rock, TX 78664
Johnramos2121@gmail.com

      You are notified that these requests and your answers may be used in this litigation. You are further notified that you are charged with the duty, as imposed upon you by Federal Rule of

Civil Procedure 26(e), to supplement your responses promptly if you later obtain information upon the basis of which you or your attorney know that one or more or such responses was incorrect when made, or although complete and correct when made, is no longer complete and correct.

If you encounter any difficulties in responding or anticipate any objections, please contact my office in advance of your response so that we can resolve any difficulties informally. As always, if you have any questions or concerns, please feel free to call my office.

## INSTRUCTIONS

In answering these requests, please furnish all information, documents which are available to you, including, without limitation, all documents in the possession of your attorneys, accountants, affiliates, auditors, agents, employees, officers, directors, shareholders, contractors, or other personnel, and not merely such documents as are in your possession.

If you cannot respond to any of the following requests in full, after exercising due diligence to secure documents to do so, please so state, and respond to the extent possible, specifying all reasons why you are unable or unwilling to respond to the remainder, stating whatever documents you have concerning the unproduced documents, and what efforts you made to secure documents sufficient to allow you to respond fully to the particular request.

Although one or more of the following requests may not appear to be applicable to or directed to you, please respond to each and every one of them to the extent that you are able to provide any response thereto whether such response consists of documents within your own knowledge or what you have obtained from others. However, for every response in which you include documents received from others, please provide the name, any known address, and any known phone number of the person from whom you so received such documents. In every such instance please state that you cannot verify such of your own personal knowledge, identifying particularly the documents for which you cannot vouch. Further, these requests contain words or phrases which require you to refer to the "Definitions" section of this document provided herein below.

Unless otherwise stated, each request pertains to the time period beginning January, 1999, through the present date. Thus, your responses should be fully answered as they pertain to information, recordings or documents within that time frame. Further, each request should identify the appropriate time frame, if your response requires same.

## DEFINITIONS

1. "You" includes Midland Credit Management, Inc. the company, entity, institution, agency, subsidiary(ies), parent corporation(s) and/or any of its branches, departments, employees, agents, contractual affiliates, or otherwise connected by legal relationship, in the broadest sense. "You" includes any of your sister companies or related entities and their connected companies, whether or not separately incorporated.

2. "Document(s)" shall mean and include any printed, typewritten, handwritten or otherwise recorded matter of whatever character, including specifically, but not exclusively, and without limiting the generality of the foregoing, letters, diaries, desk and other calendars, memoranda, telegrams, posters, cables, reports, charts, statistics, envelopes, studies, newspapers, news reports, business records, book of account(s) or other books, ledgers, balance sheets, journals, personal records, personal notes, any piece of paper, parchment, or other materials similarly used with anything written, typed, printed, stamped, engraved, embossed, or impressed upon it, accountants statements, accounting records of any kind, bank statements, minutes of meetings or other minutes, labels, graphics, notes of meetings or conversations or other notes, catalogues, written agreements, checks, announcements, statements, receipts, returns invoices, bills, warranties, advertisements, guarantees, summaries, pamphlets, prospectuses, bulletins, magazines, publications, photographs, work-sheets, computer printouts, telex transmissions or receipts, teletypes, telefaxes, file folders or other folders, tape recordings, and any original or non-identical (whether different from the original by reason of any notation made on such copies or otherwise), carbon, photostatic or photograph copies of such materials. The term "documents" shall also mean and include every other recording of, or means of recording on any tangible form, any form of information, data, communication, or representation, including but not limited to, microfilm, microfiche, any records stored on any form of computer software, audio or video tapes or discs, digitally recorded disks or diskettes, or any other medium whatsoever.

For each "document" responsive to any request withheld from production

by you on the ground of any privilege, please state:

    (a)    the nature of the document (e.g., letter, memorandum, contract, etc.);

    (b)    the author or sender of the document;

    (c)    the recipient of the document;

    (d)    the date the document was authored, sent, and/or received; and

    (e)    the reason such document is allegedly privileged.

3. "Audit Trail" means a complete, detailed listing of each and every alteration, deletion, inquiry into, modification or other change to the credit report or profile as maintained in recorded form, in the broadest sense, by "you". The listing should include the identity, address, employer and title of the person(s) taking the action, the identity, address, employer and title of the person(s) authorizing the action, a detailed explanation of the action taken, the date of the action, the means used to effect such action, the location of origin of the action and the reason the action was taken. The term "audit trail" also includes the definition provided for the phrase in the FederBush, Federal Trade Commission and Formal Staff Opinion Letter, March 10, 1983.

4. "Data" means the physical symbols in the broadest sense, that represent information, regardless of whether the information is oral, written or otherwise recorded.

5. "Data field" means any single or group of character(s), number(s), symbol(s) or other identifiable mark(s) maintained in a permanent or temporary recording which represent, in any way, an item or collection of information. "Data field" includes all types of data whether maintained in integer, real, character or boolean format.

6. "Database" or "databank" means any grouping or collection of data field(s) maintained, in any format or order, in any permanent or temporary recorded form.

7. "Hardware" means the physical components of a computer or any device capable of maintaining recorded data.

8. "Software" means the entire set of computer programs, procedures, documentation, or other recorded instructions which guide a mechanical device or human in the operation of the computer or mechanical device.

9. "Computer" means any and all programmable electronic devices or apparatuses, including hardware, software, and other databanks, that can store, retrieve, access, update, combine, rearrange, print, read, process or otherwise alter data whether such data maintained in that device or at some other location. The term "computer" includes any and all magnetic recordings or systems, systems operating on or maintaining data in digital, analog, or hybrid format, or other mechanical devices, or other devices capable of maintaining writings or recordings, of any kind, in condensed format, and includes any disk, tape, recording, or other informational source, regardless of its physical dimension or size.

10. "Format" means the general makeup or general plan of organization or arrangement of data.

11. "Identify" means that you should state:

(a)  any and all names, legal, trade or assumed;
(b)  all addresses used;
(c)  all telephone and telefax numbers used;
     and, if applicable:
(d)  brand, make, manufacturer's name, address, phone number and the manufacturer's relationship to any and all Defendants in the above captioned action; and
(e)  employer's name, address, phone number and the employer's relationship to any and all Defendants in the above captioned action.

12. "Person(s)" means any human being, sole proprietorship, limited partnership, partnership, association, group of human beings, other legal or de facto entity, or corporation, of whatever kind.

13. "Credit worthiness" means any item of information which, in any way, represents or bears upon the credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living of a person.

14. "Credit issuer" means any person who extends, purchases or takes assignments of credit to any consumer(s), as the whole or part of their business, regardless of the nature of the arrangement between the consumer and the person issuing credit.

15. "Explain" means to elucidate, make plain or understandable, to give the reason for or cause of, and to show the logical development or relationships thereof.

16. "Describe" means to represent or give an account of in words.

17. "Access Programs" means those programs, physical or computer-based, which insure authorization, identification, verification, access control, accountability and security audit of your consumer credit database.

18. "Personal Identifiers" means a person's name or social security number or other unique data which identifies or is associated with a particular "person".

19. "Credit scoring" refers to numerical assessments, provided by you or any other consumer reporting agency to a subscriber, designed to grade the specific consumer and calculate the risk of granting credit. This term includes all forms of scoring including, but not limited to, application scoring, behavior scoring and credit bureau scoring.

20. "Program" means the following: (1) a plan for solving a problem; (2) to devise a plan for solving a problem; (3) a computer routine (i.e., a set of instructions arranged in proper sequence to cause a computer to perform a particular process); (4) to write a computer routine.

21. "Header record" means a machine readable record at the beginning of a file containing data identifying the file and data used in file control.

## REQUESTS FOR PRODUCTION

1. **PRODUCE:** Please produce a copy of each document involving communication(s) or contact(s) between you and the following entities [or any of their agents, representatives, attorneys and employees], which in any way references Plaintiff or any of his personal identifiers, or any allegation or defense asserted in this action:

   a) John Ramos;
   b) Trans Union, LLC;
   c) Equifax
   d) Experian;
   e) Any state or federal governmental entity;

f) Any other consumer reporting agency.

**RESPONSE:**

2. **PRODUCE:** Please produce a copy of each of your computer data system screens and files which in any way references plaintiff and/or his personal identifiers.

**RESPONSE:**

3. **PRODUCE:** Please produce any and all policy manuals, procedure manuals, or other documents, which address your policies, practices or procedures in the investigation or reinvestigation of credit data and compliance with 15 U.S.C. 1692, et. seq.,

**RESPONSE:**

4. **PRODUCE:** Please produce your policies, guidelines, and procedures for processing consumer dispute verification communications from any consumer reporting agency (15 U.S.C. 1692, et. seq.,) to whom you subscribe(d).

**RESPONSE:**

5. **PRODUCE:** Please produce your policy manuals, procedure manuals, or other documents, which address your policies, practices or procedures regarding the reporting of credit data.

**RESPONSE:**

6. **PRODUCE**: Please produce all dispute resolution [DR] logs and records you created which reference plaintiff or any of his personal identifiers.

**RESPONSE:**

7. **PRODUCE**: Please produce any and all of your manuals describing and explaining how your credit database system captures and stores credit report and dispute data upon access and maintenance by your employees or upon periodic system backup or maintenance.

**RESPONSE:**

8. **PRODUCE**: Please produce your documents discussing the Metro Tape Format which you utilize to report your consumer credit data to consumer reporting agencies.

**RESPONSE:**

9. **PRODUCE**: Please produce your policy manuals, procedure manuals, or other documents, which address the amount and type of information required of any consumer disputing any item of information on one of your accounts, in order to cause you to initiate your correction, update, modification and/or deletion of the disputed data.

**RESPONSE:**

10. **PRODUCE**: Please produce your policy manuals, procedure manuals, or other documents, which address instructions or directions, provided to your company by each consumer reporting agency, with regard to the means, methods and guidelines for communicating corrections of credit data.

**RESPONSE:**

11.  **PRODUCE**: Please produce copies of any and all credit reports generated and/or issued to you concerning Plaintiff or which bear any of the personal identifiers of Plaintiff. In connection therewith, please identify the supplier of each document.

**RESPONSE:**

12.  **PRODUCE**: Please produce all consumer dispute verification forms, automated consumer dispute verification forms and universal data farms and other instructions for data changes going to and from any each consumer reporting agency which in any degree reference plaintiff or any of his personal identifiers.

**RESPONSE:**

13.  **PRODUCE**: Please produce copies of any and all consumer dispute verification(s) documents (CDV's or ACDV's) or Universal Data Forms [or their equivalent] you sent to any person or which you received from any person, which in any way references Plaintiff, any of his personal identifiers, or any allegation or defense asserted in this action.

**RESPONSE:**

14.  **PRODUCE**: Please produce any and all work papers, notes, and documents provided to and in the file of any expert witness, including any alleged employee expert witness(es), who may or will testify in this case, or in the file of any alleged expert who has written a report which has been, may be, or will be relied upon, in whole or in part, by a testifying expert.

**RESPONSE:**

15.     **PRODUCE**: Please produce any and all expert reports which have been prepared in connection with this lawsuit or the incident giving rise to this lawsuit, if the expert is expected to or may testify in this cause.

**RESPONSE:**

16.     **PRODUCE**: Please produce any and all expert reports that were or will be relied upon, in whole or in part, or which were produced by any expert retained or engaged by you.

**RESPONSE:**

17.     **PRODUCE**: Please produce copies of any statements or recordings you have made, taken or received from Plaintiff or any third person in any way connected with this action.

**RESPONSE:**